[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action to foreclose a mortgage on premises known as 5 Mannz Street, Hartford and to recover sums due under the promissory note secured by said mortgage (Note 1) as well as a second promissory note (Note 2) was amended by stipulation prior to trial, so as to limit this action to one for damages under the promissory notes.
Trial was had before this court on September 18, 24, 25 and October 1, 1996.
Plaintiff Charles J. Ayers ("Ayers") seeks to recover the full amount of promissory Note 1 in the amount of $129,722 made by the defendant Steve Atuahene ("Atuahene") and allegedly guaranteed by the defendant F.A. Investment Group Inc. ("F.A.") together with interest and attorneys fees, and the full amount of Note 2 in the amount of $22,500 made by Agnes Manu and allegedly guaranteed by defendant Atuahene and Ayers Beverage Company, Inc. ("Ayers Soda").
Defendants admit that Atuahene executed both notes and that F.A. signed a guaranty of Note 1, but deny all other allegations and go on to file seven special defenses and a counterclaim, containing six counts. The special defenses are equitable in nature and allege fraud and misrepresentation involving the execution of the notes and the purchase of the land and corporate business for which payment was largely made by notes; the counterclaim seeks damages allegedly caused by Ayers' fraudulent conduct, breach of contract, tortious interference, negligence and a CUTPA violation.
These claims arise out of the sale and financing of a soda pop bottling business owned by Ayers Soda and the premises in which it was located known as 5 Mannz Street, Hartford owned by Ayers, individually on October 30, 1992.
— I —
In May, 1991, Atuahene, a Philadelphia resident, saw an advertisement for the sale of a soft drink bottling company, contacted Ayers and over the course of several months submitted CT Page 6690 several written offers for the purchase of the business and the real property. On April 8, 1992, William Healey, attorney for Ayers submitted to Atuahene separate revised agreements for the sale of the assets of Ayers Soda and the Mannz Street real estate and on April 30 these separate agreements were signed by Atuahene as buyer and Ayers as the individual owner of the real property and as president of Ayers Soda, the corporate owner of the bottling business.
The closing originally scheduled for June 19, 1992 was postponed several times because of the buyer's financing considerations until October 30, 1992. A few days before the closing, Atuahene received the closing documents which had been mailed to his home in Philadelphia and when he arrived in Hartford he telephoned Attorney Healey to advise him that instead of buying the assets of the bottling business as provided in the documents he wished to acquire the shares of stock of Ayers Soda in the name of his wife Agnes Manu. After consulting with Ayers, Attorney Healey advised Atuahene that he would have to bear some of the costs in preparing new documents and Atuahene agreed to pay $500 toward these costs.
The October 30, 1992 closing took place at Attorney Healey's office with Atuahene unrepresented by counsel. The Mannz Street premises were conveyed to Atuahene by warranty deed, the adjustment sheet showing an adjusted purchase price of $160,320.76, against which the buyer was given credit for a deposit of $4,000 cash at closing of $26,598.76 and a principal money note signed by Atuahene in the amount of $129,722 (Note 1) secured by a mortgage on the premises. Attached to the mortgage note was a guaranty made by F.A. executed by Atuahene its president.
The stock of Ayers Soda was conveyed to Agnes Manu, the adjustment sheet showing an adjusted purchase price of $30,068.90, a credit for deposit of $8,500, cash paid at closing of $1,568.90, and the balance of $20,000 payable by a ninety day note (Note 2). In actuality, the note was made in the amount of $22,500, payable to Ayers representing the balance due of $20,000 plus $2,500 in unpaid option fees incurred because of the extension in original closing date. The note was signed by Agnes Manu personally. Attached to the note was a "Guaranty and Endorsement" executed by Agnes Manu as President of Ayers Soda. Underneath her signature and following the typed words "Agnes Manu, its president duly authorized," there appears the signature CT Page 6691 of Atuahene, with his name typed underneath.
Note 1 in the amount of $129,722 provided for a combined interest and principal payment of $75,000 on October 30, 1994, two years after closing and a similar payment on October 30, 1995, three years after closing.
Note 2 in the amount of $22,500 was payable 90 days after closing with a provision that it could be discharged under certain conditions by a principal payment of $20,000 plus accrued interest.
Article II, Section (K) of the mortgage deed securing Note 1 contained a disputed provision which provides that "any default in any other note . . . between Mortgagor . . . and the mortgagee" constitutes a default under the mortgage agreement and Section 2.2 provides for acceleration of the entire unpaid balance on default not cured after ten days notice.
Paragraph 16 of the purchase agreement dated April 30, 1992 contained a clause requiring Ayers to "remain in the employ of Buyer as a `consultant/manager' of Ayers Soda for a period of three (3) years following the date of closing. Such employment shall be at direction of Buyer but shall not be substantially different in scope as his current employment with said business. . . ." The paragraph set forth the rate of weekly compensation and fringe benefits and provided that if Ayers voluntarily left the employ of buyer during the first three years, the buyer would be entitled to certain sums deducted from his projected note payments to Ayers. At the closing a separate agreement was signed by the parties rescinding the April 30, 1992 agreement but specifically reaffirming the employment provision, but making Agnes Manu additionally responsible for carrying it out.
On October 30, 1992, following the closing, the parties visited the plant at 5 Mannz Street and thereafter Ayers managed the business of Ayers Soda until October, 1993, when he stopped coming in because he claimed his salary had not been paid. There had been earlier interruptions of salary, payment of which resumed after written demand was made on July 15, 1993. In late September, 1993 the business was shut down for all practical purposes after a series of state inspections had revealed unsanitary conditions resulting in an embargo on selling soda on November 3, 1993. Note 2 which was due on approximately January CT Page 6692 30, 1993 had not been paid and this action to foreclose the mortgage securing Note 1 had been instituted in June, 1993. The bottling business at 5 Mannz Street was never reopened but later carried on by Atuahene from a Philadelphia location.
— II —
Atuahene admits that the notes have not been paid but contests the triggering of the default clause in the mortgage deed securing Note 1 by the failure to timely pay Note 2. In addition, he has filed a large number of equitable claims as special defenses and as a basis for his counterclaim, which may be summarized as follows:
(1) Note 2 was never executed by Atuahene individually.
 (2) Ayers Soda was a dissolved corporation at the time of closing.
(3) The real estate was over-valued.
 (4) Ayers failed to deliver over certain property, including soda formulas, tax records, keys and motor vehicles.
 (5) Ayers failed to provide sufficient inventory at the time of closing.
 (6) Ayers failed to operate the soda plant properly in violation of his employment contract causing the closedown by the state.
— III —
(1) As noted above, the guaranty attached to Note 2 was signed by Atuahene, but he claims he signed only as an officer of Ayers Soda and not in his personal capacity. He has failed to sustain his claim. Nothing surrounding his signature identifies him as an officer of the corporation, as in the case of Agnes Manu. His claim that he signed primarily because he believed all corporate doings required two signatures is refuted by the guaranty attached to Note 1, where his was the only signature made on behalf of F.A. Corporation.
(2) It was undoubtedly true that Ayers Soda was a dissolved corporation at the time of closing because of the failure of CT Page 6693 Ayers to file a timely annual report in July, 1992. However, Atuahene did not learn this until December, 1992, and the corporation was reinstated without any cost to him by February 17, 1993, and Atuahene did not suffer any material loss or disadvantage. His claim that he held off making an application for refinancing when he learned of the forfeiture is vague and unconvincing. His learning of the forfeiture, under all the circumstances, was not sufficient reason for non-payment of Note 2.
(3) Atuehene claims that the $160,000 purchase price of the real estate far exceeded its fair market value. Overvaluation of real property, even if proven, is not sufficient reason for refusal to pay a note secured by a mortgage on the property. Moreover, overvaluation is not proven simply because the property was appraised for $110,000 in July, 1994, or $44,000 at the time of trial, or because the accumulated back taxes exceed present fair market value. The primary value of the real estate was intimately connected with the bottling plant located on it, and the total purchase price of the real estate and business in the amount of $190,000 was less than the original offer of $210,000 made by Atuahene in October, 1991.
(4) At the time of the closing, Atuahene was apparently satisfied to leave day to day control of the bottling operations to Ayers. Indeed he had no choice since he lived in Philadelphia. He has not proven that he requested control of the keys and the checking account from Ayers and was refused. He was not in the Hartford area often enough to have any particular need for the keys. The motor vehicles owned by the corporation were used by Ayers and the other workers in the daily operation. There was testimony about a visit by Ayers, Manu and Atuahene to the bank where the corporation account was kept, but Atuahene did not attempt to add his signature or that of Mrs. Manu or to remove the authorization of Ayers. Atuahene and corporations he controlled made deposits to that bank account and checks were drawn by Ayers to pay company expenses and salaries, including his own. Tax records of the company may not have been turned over promptly to Atuahene but there is no convincing evidence that he made a demand for them or proof that he was substantively disadvantaged by not having them.
The main claim under this heading concerned so-called formulas for making the soda pop. Despite Atuahene's stress on the importance of formulas neither the preliminary agreements nor closing documents contain any reference to them. Ayers disputes CT Page 6694 the existence of any formulas other than the directions on the bulk syrup containers which he claims he gave to Atuahene on a sheet of paper. There was some evidence that attorney Healey discussed the withholding of "formulas" because of non-payment of Note 2, but the alleged failure of Ayers to turn over formulas apparently did not prevent Atuahene from continuing and expanding the soda pop business from its subsequent Philadelphia location.
(5) Atuahene claims that of the approximate $30,000 purchase price of the business, $12,500 was allocated to inventory and that he understood this to mean about 2,500 cases bottled soda ready for distribution, whereas in actuality there was only a few hundred cases in stock on October 30, 1992. Nothing in the agreements or adjustment sheet verifies this claim. The allocation of the purchase price between inventory, good will and machinery was suggested by Atuahene's accountant. There was conflicting testimony about the normal daily inventory of bottled soda prior to the sale, but the size of the storage area and the testimony of Ayers strongly suggest that 2,500 cases would have exceeded by far the available storage area. Moreover, the first complaint about the low inventory was not made on the day of closing when Atuahene inspected the premises, but in a pleading dated June 30, 1993.
(6) There is conflicting testimony over the cause of the state's shutdown of the plant in fall, 1993, for foreign objects in the soda. Atuahene attributes sole blame on Ayers because he was plant manager and suggests his lack of supervision was purposeful so that the business would fail and he could recover it and collect on the notes. Ayers testified that the situation developed because Atuahene did not update the screening equipment and purchased used bottles from unsanitary sources. Even if Ayers was negligent in his supervision of the plant, it is difficult to see how Mrs. Manu or Atuahene can escape responsibility for unsanitary conditions by blaming a manager who was hired by them. It is also difficult to understand why Ayers would deliberately sabotage a bottling operation from which he was drawing a weekly paycheck and the demise of which could only imperil his security for payment of the notes. No breach of any fiduciary duty owed by him to the owners has been demonstrated.
— V —
Underlying all the arguments of Atuahene is his claim that he was not represented by counsel and did not understand the legal CT Page 6695 import of the closing documents, particularly the cross triggering default of the two promissory notes. Indeed Ayers testified that he was not aware of this clause until he was advised by his attorney that it could be invoked. However, the clause was in the signed documents and is not unusual in financing arrangements. There are many clauses in mortgage documents inserted by attorneys for the protection of clients without the client's specific knowledge. Moreover, Atuahene holds a master's degree in business and had some formal legal training and testified that he had consulted his own attorney with respect to some of the preliminary agreements. He was the principal in his own finance company and managed an investment group. There is no evidence that Attorney Healey, who represented Ayers and prepared the documents, was doing anything other than representing his client as best he could making it clear that he was in no wise looking after Atuahene's interest. Perhaps Attorney Healey should have taken the trouble to explain the documents in greater detail but particularly in view of the last minute changes requested by Atuahene, it does not appear that he attempted to take any advantage over Atuahene or that he violated any applicable ethical norms.
Written demand for payment of Note 2 had been made as early as March 17, 1993, and default in payment properly triggered acceleration of Note 1, because Note 2 was essentially another note between the mortgagor and the mortgagee.
— VI —
The closing documents provided that Ayers remain in employment for three years after closing and in the event that he left during the first year, $30,000 would be deducted from the sums due him on the note. He was being paid $500 a week and he tendered his resignation in October, 1993, after the business was closed by the State, because he had not been paid for three weeks and no funds had been put in the corporation checking account. Under these circumstances, it cannot be found that Ayers left the employment voluntarily or that he terminated the employment agreement for other than just cause.
— VII —
For the above reasons it is concluded that Plaintiff has sustained his burden of proof, and defendants have failed to sustain their burden under their counterclaims. CT Page 6696
Judgment may enter under Count 1 of the Amended Complaint against the defendants Steve Atuahene and F.A. Investment Group, Inc. for $129,722.00 and interest of $31,781.89 computed at 6% per annum from October 31, 1992 to November 30, 1996 and under Count 2 against Steve Atuahene in the amount of $22,500 and interest of $5,512.50 computed at 6% per annum from October 31, 1992 to November 30, 1996.
In addition, attorneys fees are awarded to plaintiff in the amount of $19,000.
Jerry Wagner Trial Judge Referee